Case 2:21-cv-01290-R-MCS Document 22-1 Filed 03/05/21 Page 1 of 16 Page ID #:92
Case 2:21-cr-00106-MCS Document 12 Filed 03/09/21 Page 1 of 16 Page ID #:10

FILED
CLERK, U.S. DISTRICT COURT
03/09/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: DM DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2020 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>U.S. PRIVATE VAULTS, INC.,<br>　California Corporate<br>　Number C3405297,<br><br>　　　　Defendant. | CR 2:21-cr-00106-MCS<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1956(h): Conspiracy to Launder Money; 21 U.S.C. § 846: Conspiracy to Distribute Controlled Substances; 18 U.S.C. 371: Conspiracy to Structure Transactions; 18 U.S.C. § 982(a)(1), 21 U.S.C. §§ 853 and 881(a)(6), 28 U.S.C. § 2461(c) and 31 U.S.C. § 5317(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1956(h)]

A.　INTRODUCTORY ALLEGATIONS

　　1.　At times relevant to this Indictment:

　　　　a.　Defendant U.S. PRIVATE VAULTS, INC. ("USPV"), a Nevada Corporation registered with the California Secretary of State, was in the business of renting safety deposit boxes to individuals who wished to do so anonymously.

　　　　b.　Co-conspirator USPV Officer was an officer of USPV and

one of its owners.  USPV Officer dealt in marijuana, in violation of the laws of California, as well as cocaine.

   c. Co-conspirator USPV Manager was the manager of USPV. USPV Manager helped USPV Officer arrange drug deals within USPV, and helped USPV customers avoid detection by law enforcement, including by advising them to structure their cash purchases to avoid reporting requirements.

   d. Co-conspirator Gold Business was a dealer in precious metals and jewelry, and shared the same space as USPV, as well as some employees.  Gold Business helped USPV customers convert their cash into gold, and structured their cash transactions to avoid federal reporting requirements.

   e. Co-conspirator USPV Representative One was a representative of USPV, and an owner of co-conspirator Gold Business. USPV Representative One instructed USPV customers how to structure transactions to avoid federal reporting requirements.

   f. Co-conspirator USPV Representative Two was a representative of USPV, and an owner of co-conspirator Gold Business. USPV Representative Two instructed USPV customers how to structure transactions to avoid federal reporting requirements.

B. THE OBJECTS OF THE CONSPIRACY

 2. Beginning in or before 2019, and continuing through the date of this Indictment, in Los Angeles County, within the Central District of California, and elsewhere, defendant USPV conspired with others known and unknown to the Grand Jury to launder money, in violation of Title 18, United States Code, Section 1956, namely:

   a. to knowingly conduct and attempt to conduct financial transactions involving the proceeds of a specified unlawful activity,

that is, the distribution of controlled substances, with the intent to promote the carrying on of that specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

    b. to knowingly conduct and attempt to conduct financial transactions involving the proceeds of specified unlawful activity, that is, the distribution of controlled substances, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

    c. to knowingly conduct and attempt to conduct financial transactions involving the proceeds of specified unlawful activity, that is, the distribution of controlled substances, knowing that the transactions were designed in whole or in part to avoid a transaction reporting requirement under Federal law, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

C. <u>MANNER AND MEANS OF THE CONSPIRACY</u>

    3. The objects of the conspiracy were carried out and were to be carried out, in substance, as follows:

    a. Defendant USPV would adopt business practices that attracted customers in possession of proceeds from criminal offenses, including drug trafficking, and not law-abiding persons. Such practices included: (1) touting the anonymity of the safety deposit rentals that defendant USPV would provide, including by advertising "we don't even want to know your name"; (2) boasting that, unlike banks, its anonymous safety deposit box rentals did not require customer information that "can be easily accessed by government agencies (such as the IRS)"; (3) making arrangements for the payment

of the rental fees in cash and other ways that would be untraceable; (4) issuing safety deposit box keys that were unmarked and unnumbered so that law enforcement could not determine that the keys unlocked safety deposit boxes at USPV; and (5) charging safety deposit box rental rates several times higher than those at banks.

      b. USPV Officer would capitalize defendant USPV with the proceeds of his illegal drug trafficking.

      c. USPV Officer would invite other drug traffickers who knew and trusted him because of his illegal drug trafficking to store the proceeds of their drug trafficking at defendant USPV.

      d. Employees of defendant USPV would conduct counter surveillance of the neighborhood and warn customers when they observed law enforcement.

      e. Agents of defendant USPV would instruct customers to structure transactions to avoid currency transaction reports including by purchasing gold and other precious metals through Gold Business, which would structure transactions and not file required currency reports.

      f. If agents of defendant USPV learned that law enforcement was interested in searching or seizing the contents of a particular customer's safety deposit box, they would attempt to warn the customer, delay law enforcement, or even remove all but a nominal amount of cash from the box for the customer, to prevent law enforcement from discovering and seizing the bulk of the cash.

      g. Defendant USPV would deposit the cash proceeds it received from its customers for safety deposit box rentals, which included proceeds from the distribution of controlled substances, into its bank account, and then use those proceeds to maintain USPV's

anonymous storage facilities for its criminal customers.

        h.    USPV Officer and USPV Manager would negotiate drug deals illegal under California law within the secured space of USPV, and USPV Officer would store the cash proceeds from drug deals within a safety deposit box at USPV.

        i.    USPV Manager would accept cash purportedly from illegal drug sales, and structure transfers of it to Gold Business in amounts not greater than $10,000 at a time in exchange for wire transfers that purported to be for the sale of precious metals.

COUNT TWO

[21 U.S.C. § 846]

4. The Grand Jury realleges paragraph 1 of this Indictment here.

A. OBJECTS OF THE CONSPIRACY

5. Beginning in or before 2019, and continuing through the date of this Indictment, in Los Angeles County, within the Central District of California, and elsewhere, defendant U.S. PRIVATE VAULTS, INC. conspired with others known and unknown to the Grand Jury to distribute controlled substances, including marijuana, a Schedule I controlled substance, and cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and (b)(1)(D).

B. MANNER AND MEANS OF THE CONSPIRACY

6. The objects of the conspiracy were carried out, and to be carried out, as described in paragraph 3 of this Indictment, which the Grand Jury realleges here.

C. OVERT ACTS

7. In furtherance of the conspiracy and to accomplish the objects of the conspiracy, on or about the following dates, defendant USPV, acting through its officers and managers, committed various overt acts within the Central District of California, including but not limited to the following:

Overt Act No. 1: On June 28, 2019, USPV Manager distributed within USPV's business location six different butane hash oil vape cartridges containing THC to someone he believed to be a drug trafficker, but who was, in fact, a confidential informant working with law enforcement ("Confidential Informant 3"), as samples of what

**EXHIBIT A**
28

1 defendant USPV could provide in bulk.

2     <u>Overt Act No. 2</u>: On July 26, 2019, USPV Officer met Confidential Informant 3 within USPV to sell him 1,000 vape cartridges containing THC. USPV Officer delivered the cartridges in the parking lot of USPV, and received in exchange $8,000 in cash within USPV's business location.

    <u>Overt Act No. 3</u>: On or about December 11, 2019, during discussions for the sale of cocaine, USPV Officer instructed the buyer, Confidential Informant 3, to use a wireless communication application called "Signal," which is encrypted to communicate with him regarding the transaction.

    <u>Overt Act No. 4</u>: On or about December 16, 2019, USPV Officer instructed Confidential Informant 3 to come to USPV to complete the exchange.

    <u>Overt Act No. 5</u>: On or about December 16, 2019, USPV Manager called Confidential Informant 3 and explained that co-conspirator USPV Officer was not being careful enough, and could bring unwanted law enforcement attention to defendant USPV by conducting this drug deal onsite.

    <u>Overt Act No. 6</u>: On or about December 18, 2019, USPV Officer sold an ounce of cocaine to Confidential Informant 3 through intermediaries.

**EXHIBIT A**
**29**

```
                              COUNT THREE

                            [18 U.S.C. § 371]

      8.   The Grand Jury realleges paragraph 1 of this Indictment
here.
```

A.   OBJECTS OF THE CONSPIRACY

```
      9.   Beginning in or before 2019, and continuing through the
date of this Indictment, in Los Angeles County, within the Central
District of California, and elsewhere, defendant U.S. PRIVATE VAULTS,
INC. conspired with others known and unknown to the Grand Jury to
knowingly and for the purpose of evading the reporting requirements
of Section 5331 of Title 31, United States Code, and the regulations
promulgated thereunder: (1) cause and attempt to cause a nonfinancial
trade or business to fail to file a report required under Section
5331 of Title 31, and any regulation prescribed under any such
Section, in violation of Title 31, United States Code, Section
5324(b)(1); and (2) structure, assist in structuring, and attempt to
structure and assist in structuring, transactions with one or more
nonfinancial trades or businesses, in violation of Title 31, United
States Code, Section 5324(b)(3).
```

B.   MANNER AND MEANS OF THE CONSPIRACY

```
      10.  The objects of the conspiracy were carried out, and to be
carried out, as described in paragraph 3 of this Indictment, which
the Grand Jury realleges here.
```

C.   OVERT ACTS

```
      11.  In furtherance of the conspiracy and to accomplish the
objects of the conspiracy, on or about the following dates, defendant
USPV, acting through its officers and managers, committed various
overt acts within the Central District of California, including but
```

not limited to the following:

Overt Act No. 1:  On December 4, 2019, Gold Business sold jewelry for $11,900 in cash to a customer of USPV who was also a confidential informant working with law enforcement ("Confidential Informant 1"), and did not file the required IRS Form 8300.

Overt Act No. 2:  On January 13, 2020, USPV Representative One told a customer of USPV who was also a confidential informant working with law enforcement ("Confidential Informant 4"), and who expressed an interest in buying $20,000 worth of precious metals in cash, to purchase only $10,000 at a time to avoid paperwork.

Overt Act No. 3:  On January 28, 2020, USPV Representative Two told a DEA agent who was posing as a USPV customer and said he wanted to purchase $18,000 in gold, "I recommend you stay under $10,000 in cash and then you could just do some one day, and a few days later you could do the other," and explained, "If you buy less than $10,000 then there's no form."

Overt Act No. 4:  On January 29, 2020, USPV Manager instructed Confidential Informant 3, who wanted to buy gold to pay a "skante" debt "down south," meaning a debt in Mexico for methamphetamine, to keep his purchases under $10,000 each:  "That way you don't have to give no social security, no ID. All that shit goes to the IRS."  USPV Manager introduced Confidential Informant 3 to co-conspirator USPV Representative One to purchase the gold.

Overt Act No. 5:  On January 29, 2020, USPV Representative One explained to Confidential Informant 3 and his friend, who was actually an undercover police officer ("Undercover Officer"), that it was better to space out his cash purchases and keep each one under

$10,000: "Don't come in every day. . . . what they look for is a pattern of someone who with intention is trying to get around . . ."

Overt Act No. 6: On January 29, 2020, when Undercover Officer explained that he needed more than $10,000 worth of gold quickly, USPV Manager suggested that he split the purchase between himself and Confidential Informant 3, so that each purchase would be under $10,000 individually. USPV Representative One agreed to the ruse "as long as you hand me the money" separately and fill out receipts for two separate transactions. USPV Representative One also agreed that Undercover Officer could pick up the total gold purchase alone the following day.

Overt Act No. 7: On January 29, 2020, USPV Representative One accepted first $9,900 in cash from Undercover Officer and then another $5,000 which Undercover Officer handed to Confidential Informant 3, who then handed it to USPV Representative One.

Overt Act No. 8: On January 30, 2020, USPV Representative One delivered nine ounces of gold bullion to Undercover Officer.

Overt Act No. 9: On November 17, 2020, USPV Manager accepted $25,000 in cash from Confidential Informant 3, who said it was from the sale of "skante" (methamphetamine), and structured the transfer of it to Gold Business in exchange for wire transfers of $10,000 and $12,000, purportedly from the sale of gold, to launder the cash.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982(a)(1)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendant U.S. PRIVATE VAULTS, INC. that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 982(a)(1), in the event of defendant USPV's conviction under Count One of this Indictment.

2. Defendant USPV shall forfeit to the United States the following property:

   a. All right, title, and interest in any and all property, real or personal, involved in or traceable to any transaction set forth in Count One of this Indictment, including, without limitation the property set forth in paragraph 3 below; and

   b. A sum of money equal to the total value of the property described in subparagraph a above.

3. The Grand Jury finds probable cause to believe that the following property, located at U.S. PRIVATE VAULTS, INC., 9182 WEST OLYMPIC BLVD., BEVERLY HILLS, CA 90212, is subject to forfeiture on the grounds set forth in paragraph 2 above:

   a. The business computers;
   b. The money counters;
   c. The nests of safety deposit boxes and keys;
   d. The digital and video surveillance and security equipment; and
   e. The biometric scanners.

4. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b),

11

**EXHIBIT A**
**33**

defendant USPV shall forfeit substitute property, up to the value of the property described in paragraph 2 above if, as the result of any act or omission of defendant USPV, the property described in paragraph 2 above or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

EXHIBIT A
34

FORFEITURE ALLEGATION TWO

[21 U.S.C. § 881(a)(6), 28 U.S.C. § 2461(c)

and 21 U.S.C. § 853]

1. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to defendant U.S. PRIVATE VAULTS, INC. that the United States will seek forfeiture as part of any sentence in accordance with Title 21, United States Code, Section 881(a)(6), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853, in the event of defendant USPV's conviction under Count Two of this Indictment.

2. Defendant USPV shall forfeit to the United States the following property:

    a. All right, title, and interest in any and all property, real or personal:

        i. constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense set forth in Count Two of this Indictment, including, without limitation, the property set forth in paragraph 3 below; or

        ii. used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense set forth in Count Two of this Indictment, including, without limitation, the property set forth in paragraph 3 below; and

    b. A sum of money equal to the total value of the property described in subparagraph a above.

///

3. The Grand Jury finds probable cause to believe that the following property, located at U.S. PRIVATE VAULTS, INC., 9182 WEST OLYMPIC BLVD., BEVERLY HILLS, CA 90212, is subject to forfeiture on one or more of the grounds set forth in paragraph 2 above:

   a. The business computers;
   b. The money counters;
   c. The nests of safety deposit boxes and keys;
   d. The digital and video surveillance and security equipment; and
   e. The biometric scanners.

4. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant USPV shall forfeit substitute property, up to the value of the property described in paragraph 2 above if, as the result of any act or omission of defendant USPV, the property described in paragraph 2 above or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

|  |  |
|---|---|
| 1 | FORFEITURE ALLEGATION THREE |
| 2 | [31 U.S.C. § 5317(c) and 28 U.S.C. § 2461(c)] |

1.   Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to defendant U.S. PRIVATE VAULTS, INC. that the United States will seek forfeiture as part of any sentence in accordance with Title 31, United States Code, Section 5317(c), and Title 28, United States Code, Section 2461(c), in the event of defendant USPV's conviction under Count Three of this Indictment.

2.   Defendant USPV shall forfeit to the United States the following property:

   a.   All right, title, and interest in any and all property, real or personal, involved in or traceable to the offense set forth in Count Three of this Indictment, including, without limitation, the property set forth in paragraph 3 below; and

   b.   A sum of money equal to the total value of the property described in subparagraph a above.

3.   The Grand Jury finds probable cause to believe that the following property, located at U.S. PRIVATE VAULTS, INC., 9182 WEST OLYMPIC BLVD., BEVERLY HILLS, CA 90212, is subject to forfeiture on the grounds set forth in paragraph 2 above:

   a.   The business computers;

   b.   The money counters;

   c.   The nests of safety deposit boxes and keys;

   d.   The digital and video surveillance and security equipment; and

   e.   The biometric scanners

4.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 31, United States Code, Section

**EXHIBIT A**
15
**37**

5317(c)(1)(B), and Title 28, United States Code, Section 2461(c), defendant USPV shall forfeit substitute property, up to the value of the property described in paragraph 2 above if, as the result of any act or omission of defendant USPV, the property described in paragraph 2 above or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                                A TRUE BILL

                                _____/S/_____
                                Foreperson

TRACY L. WILKISON
Acting United States Attorney

*Brandon Fox*

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

ANDREW BROWN
Assistant United States Attorney
Major Frauds Section

**EXHIBIT A**
16
**38**